NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2025 VT 70

No. 25-AP-080

| | |
|---|---|
| Nichole Warner | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Bennington Unit, |
| | Family Division |
| | |
| Sean Warner | October Term, 2025 |

Howard A. Kalfus, J.

Alexander M. Dean and Rachel B. Strecker of Barr, Sternberg, Moss, Silver & Munson, P.C., Bennington, for Plaintiff-Appellee.

Brian K. Marthage, Bennington, for Defendant-Appellant.


PRESENT: Reiber, C.J., Eaton, Cohen and Waples, JJ., and Tomasi, Supr. J.,
Specially Assigned


¶ 1. **REIBER, C.J.** The trial court issued a final divorce order that included language awarding wife "50% of the total value of [husband's] retirement accounts as of the date of separation." Wife moved to modify this provision several months later, arguing that the property-division analysis in the body of the court's decision reflected an intent to award her half the value of those accounts as of the date of the parties' final divorce hearing—not as of the date of their separation. The court agreed and amended the final order under Vermont Rule of Civil Procedure 60(a), explaining that it was correcting the valuation date to conform to its intended division of the marital property. Husband appeals, arguing that the court erred in: disregarding his response to wife's motion as untimely filed; failing to enforce the final order's dispute-resolution procedure

as a bar to wife's motion; and modifying the final order under Rule 60(a). We conclude that the court did not err in amending the final order under Rule 60(a) and, because the rule authorizes the court to make such corrections at any time on its own motion, any alleged errors in the handling of wife's motion are harmless. We therefore affirm.

## I. Background

¶ 2.     The parties were married in 2004; they separated in April 2023 and subsequently initiated this divorce proceeding. The family division held a final divorce hearing over two days in April 2024. On the first day of the hearing, the parties entered an agreement on parental rights and responsibilities and parent-child contact for their minor children. The court approved the agreement and adopted it as a final order. On the second day of the hearing—April 30, 2024—the parties stipulated to the division of a portion of their marital assets and debts. The court then took evidence on the remaining contested issues, which included the distribution of the parties' retirement accounts and wife's request for a spousal-maintenance award.

¶ 3.     In May 2024, the court issued a written final order and decree of divorce. It included the following factual finding based on the evidence admitted at the April 30 hearing: "[Husband] has three retirement accounts with current balances of $739,699.30, $66,127.21, and $50,813.09." In dividing the marital property, the court weighed the relevant statutory factors. See 15 V.S.A. § 751(a), (b) (explaining that family court must "equitably divide and assign" parties' property upon divorce, and in doing so "may consider all relevant factors," including those specified by statute). It held:

> The marital estate has a total equity value of $1,330,516.17 including the equity in the marital home, the parties' retirement accounts, vehicles, bank accounts and debt. While [husband] alone earned the first $35,000 of his considerable retirement funds, [wife] contributed a sizeable portion of her personal injury settlement and also liquidated two retirement accounts for the benefit of both parties. Additionally, [wife] acted as the primary care provider for the children and the home while [husband] worked full-time for approximately fourteen of the nineteen years of the marriage. Thus,

2

the court concludes that [the parties] contributed comparably to the acquisition, preservation and appreciation of the marital estate.

Awarding each party the vehicles as they have divided them, their own bank accounts and debts, awarding [wife] her retirement account and then equally dividing the Robinhood investment account, the value of all of [husband's] retirement accounts and the proceeds from the sale of the marital home after the payments referenced above will result in [wife] being awarded approximately 48.67% of the marital estate and [husband] being awarded approximately 51.33%. The court concludes that this is both fair and equitable.

The court also granted wife's request for spousal maintenance. It determined that an award with a nine-year duration was appropriate, but credited husband for monthly payments he had already made under the court's temporary maintenance order.

¶ 4. The enumerated orders at the conclusion of the court's decision provided, among other things: "For the reasons stated above, it is ORDERED: . . . . [wife] is awarded 50% of the total value of [husband's] retirement accounts as of the date of separation." The court also included a procedure for the resolution of any disagreement arising between the parties in connection with the final order. Under this provision, a good-faith attempt to negotiate a resolution, including attending two sessions facilitated by a professional mediator, was required before either party could file a post-judgment motion.

¶ 5. In June 2024, husband filed a timely motion to amend the final order under Vermont Rule of Civil Procedure 59. See V.R.C.P. 59(e) (providing that motion to alter or amend may be filed within twenty-eight days of entry of judgment). He argued that while the final order reflected an intent to credit him for all of the maintenance payments he made under the temporary order, the court overlooked several of those payments in establishing the duration of the award. Husband therefore requested that the court amend the final order to credit him for those payments. The court issued an order confirming that its intent had been to credit husband for all of his previous maintenance payments and indicated that, unless wife disagreed with husband's representation

3

about the number of payments, the motion would be granted. Wife did not object, and the court accordingly amended the final divorce order under Rule 59(e). Neither party appealed to this Court. *See* V.R.A.P. 4(b)(5) (explaining that full time for direct appeal of final judgment begins to run for all parties from entry of order disposing of timely Civil Rule 59 motion to alter or amend).

¶ 6. On December 19, 2024, wife filed a motion for relief from judgment under Vermont Rule of Civil Procedure 60. *See* Reporter's Notes, V.R.C.P. 60 (explaining that Rule 60 "is intended to provide the sole means of obtaining relief from a judgment after the time for a motion under Rule 59 has run"). She argued that the 48.67%-51.33% property split referenced in the findings and conclusions of the court's final decision was not effectuated by its later-stated division of the marital property. Wife reasoned that because husband's retirement accounts were valued in the order at the "date of separation" instead of the "date of final hearing," the accounts had a lower valuation under the earlier timeframe. This resulted in wife being awarded a smaller portion of the total marital estate than intended by the court as reflected in the body of its final order. Wife therefore claimed a mistake was made by the court not consistent with its intent and requested that it amend the final order to divide the estate based upon valuations of husband's three retirement accounts as of the date of the final hearing.

¶ 7. On January 5, 2025, husband responded to wife's Rule 60 motion. He asserted that wife failed to follow the final order's dispute-resolution procedure before filing her motion and moved to dismiss it on this basis. He also opposed wife's request on its merits, arguing no relief was available under any of the rule's provisions. Husband further contended that wife could have sought timely relief by filing a motion under Rule 59—as he did with respect to the maintenance award—or taking a direct appeal, but the time to pursue either of these options had lapsed.

¶ 8.     The family division granted wife's motion on January 9, 2025. It observed that no response had been filed within fourteen days and did not address the arguments raised in husband's January 5 filing. It then stated:

> The court has reviewed the final divorce order and decree and it is clear that it intended for the balances of $739,699.30, $66,127.21 and $50,813.09 to be evenly divided between the parties. Since these were the balances of [husband's] retirement accounts at the time of the final hearing, the provision that those accounts be divided as of the time of separation was a mistake.

On this basis, it amended the conclusion of the final order to award wife "50% of the total value of [husband's] retirement accounts as of the date of the final hearing, April 30, 2024." In a contemporaneous entry, the court denied husband's motion to dismiss as moot on grounds that the order had already been amended.

¶ 9.     Husband moved under Rule 59 to strike the January 9 amendment and requested that the court set a hearing on wife's Rule 60 motion. He argued that because the court did not hold a hearing, it had not made findings addressing the considerations necessary to support a grant of relief under Rule 60(b). The court denied husband's motion. It explained that this was not a Rule 60(b) issue warranting a hearing because its modification of the final order instead fell within the scope of Rule 60(a). The amendment did not impact the parties' substantive rights, the court explained, but instead simply modified the order to "accurately reflect[] the court's decision on the equitable distribution of property between the parties." This appeal followed.

## II.  Analysis

¶ 10.     Husband seeks reversal of the trial court's January 2025 decision modifying the final divorce order on three grounds. His primary contention is that—for several interrelated reasons—the trial court erred in correcting the final order under Rule 60(a). He also argues that the court erred in disregarding his response to wife's Rule 60 motion as untimely filed because her request for relief from judgment was a "dispositive motion" to which he had thirty, rather than

5

fourteen, days to respond under Vermont Rule of Civil Procedure 7(b)(4). See V.R.C.P. 7(b)(4) (providing that, unless court orders otherwise, "[a]ny party opposed to the granting of a written dispositive motion . . . shall file a memorandum in opposition thereto not more than 30 days after service of the motion" while "[a] memorandum in opposition to any nondispositive motion shall be filed not more than 14 days after service of the motion"). Finally, he asserts that the court erred in failing to enforce the final order's dispute-resolution procedure as a bar to wife's motion and should have imposed the sanction of dismissal pursuant to Vermont Rule for Family Proceedings 18. See V.R.F.P. 18(e)(2) (providing that where party does not comply with mediation requirement, court may "dismiss the action or any part of the action" as sanction). For the reasons set forth below, we conclude that husband has not demonstrated that the court erred in amending the final divorce order under Rule 60(a) and therefore do not reach his remaining arguments.

¶ 11. Rule 60(a) provides, in relevant part: "Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders." V.R.C.P. 60(a). The rule is based on Federal Rule of Civil Procedure 60(a) and is identical to its federal analogue in all material respects.[1] Reporter's Notes, V.R.C.P. 60 ("This rule is substantially identical to Federal Rule 60."); Reporter's Notes, V.R.C.P. 1 (providing that Vermont's rules "are based on the Federal Rules of Civil Procedure"). It is also in accord with our earlier case law, see Reporter's Notes, V.R.C.P. 60, which recognized the "discretionary power" of trial courts to "open, vacate and correct their own judgments . . . . to relieve a party against the unjust operation of a record resulting from a mistake on the part of the

---

[1] Federal Rule 60(a) states that "[t]he court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record," and "may do so on motion or on its own, with or without notice." F.R.C.P. 60(a).

6

court, rather than the fault, neglect or purposeful act of the parties." Town of Putney v. Town of Brookline, 126 Vt. 194, 201, 225 A.2d 388, 393 (1967).

¶ 12. This Court has had few opportunities to interpret Rule 60(a) since its adoption. In 1988, we briefly explained that it does not authorize trial courts to correct "error[s] in substantive law." Greenmoss Builders, Inc. v. Dun & Bradstreet, Inc., 149 Vt. 365, 367, 543 A.2d 1320, 1322 (1988). In doing so, we cited to the First Circuit's decision in Scola v. Boat Frances, R., Inc., pointing out the "narrowness" of the clerical-mistake doctrine under the "virtually identical federal rule." Id. at 367, 543 A.2d at 1399 (citing Scola, 618 F.2d 147, 152-53 (1st Cir. 1980)). The following year, in State v. Champlain Cable Corp., we again relied on federal jurisprudence in explaining that Rule 60(a) "envisions giving relief from minor errors," while "errors that affect substantial rights of the parties" fall beyond its reach. 147 Vt. 436, 439, 520 A.2d 596, 598-99 (1986) (citing Warner v. City of Bay St. Louis, 526 F.2d 1211, 1212 (5th Cir. 1976); 11 C. Wright & A. Miller, Federal Practice and Procedure § 2854, at 149 (1973)), partially superseded by rule as recognized in In re A.B., 2025 VT 12, ¶ 2, __ Vt. __, 336 A.3d 437 (mem.).

¶ 13. Here, husband argues that if the court made a mistake in awarding wife half the value of his retirement accounts as of the date of the parties' separation instead of as of the date of the final hearing, this was not a "clerical mistake" or "error . . . arising from oversight or omission" subject to correction under Rule 60(a), but instead an error of substantive law. Relying primarily on Champlain Cable, he contends that the error identified by the court was one that affected his substantial rights, and therefore relief was not available under Rule 60(a). Relatedly, husband asserts that the court erred in denying his request for a hearing on wife's motion, because, in his view, the court was required to make findings "quantify[ing] the impact of the amended judgment" on his substantial rights before reaching a decision. Finally, husband urges us to conclude that wife should be prohibited from using Rule 60(a) in place of a timely Rule 59 motion or direct appeal.

7

¶ 14. Where Rule 60(a) applies, the trial court has discretion in determining whether to enter a corrected judgment, and we review only for an abuse of that discretion. See V.R.C.P. 60(a) (providing that clerical errors "may be corrected by the court" (emphasis added)); N.E. Phoenix Co. v. Grand Isle Veterinary Hosp., Inc., 2022 VT 10, ¶ 18, 216 Vt. 227, 275 A.3d 134 (explaining that "plain, ordinary meaning" of word "may" "connotes discretion"); see also Putney, 126 Vt. at 201, 225 A.2d at 393 (describing trial court's authority to correct judgment as "discretionary power" pursuant to which "[r]elief may be granted or withheld as justice of the cause may require"). The predicate question—whether the error the trial court identified here was subject to correction under Rule 60(a)—is an issue of law that we review without deference. State v. Amidon, 2008 VT 122, ¶ 16, 185 Vt. 1, 967 A.2d 1126 ("The interpretation of procedural rules is a question of law which we review de novo.").

¶ 15. "In interpreting a court rule, we employ tools similar to those we use in statutory construction." In re VSP-TK / 1-16-18 Shooting, 2019 VT 47, ¶ 25, 210 Vt. 435, 217 A.3d 560 (quotation omitted). We thus look primarily to the rule's "plain language and the purpose it was designed to serve." Amidon, 2008 VT 122, ¶ 16. Where our rule is substantively "identical to its federal counterpart, we look to federal cases interpreting the federal rule for guidance." Id.; see Reporter's Notes, V.R.C.P. 1 (explaining that "[f]ederal cases interpreting the Federal Rules are an authoritative source for the interpretation of identical provisions of the Vermont Rules"). "[R]eliance on federal case law" is "particularly appropriate" where, as here, this Court has had limited opportunity to construe the Vermont rule. State v. Villar, 2017 VT 109, ¶ 9, 206 Vt. 236, 180 A.3d 588.

¶ 16. Husband essentially contends that the distinction between "clerical mistakes" and errors that are not correctable under Rule 60(a) depends on the magnitude of the proposed correction's impact on the parties' obligations under the order. There is no evidence in the record as to the value of husband's retirement accounts on the date of the parties' separation, but husband

8

asserts that the change to the valuation date would result in him having to pay wife an additional $100,000. In his view, the trial court was required to hold a hearing to assess the impact of the contemplated correction on his financial obligations and, based on that evidence, determine whether the change was one that would impact his substantial rights.

¶ 17. Federal courts, however, overwhelmingly take a different approach to Federal Rule 60(a). The magnitude of the correction's impact on the parties does not determine the availability of relief; rather, "the scope of a court's authority under Rule 60(a) to make corrections to an order or judgment is circumscribed by the court's intent when it issued the order or judgment." Sartin v. McNair L. Firm PA, 756 F.3d 259, 264, 266 (4th Cir. 2014). Under this view, the "basic distinction" between clerical mistakes and errors that cannot be corrected under Rule 60(a) "is that the former consist of blunders in execution," while the latter "consist of instances where the court changes its mind," either because it made a substantive error in its original determination, "or because on second thought it has decided to exercise its discretion in a manner different from the way it was exercised in the original determination." Blanton v. Anzalone, 813 F.2d 1574, 1577 n.2 (9th Cir. 1987) (quotation omitted); see Rivera v. PNS Stores, Inc., 647 F.3d 188, 194 (5th Cir. 2011) ("A Rule 60(a) motion can only be used to make the judgment or record speak the truth and cannot be used to make it say something other than what originally was pronounced." (quotation omitted)); Truskoski v. ESPN, Inc., 60 F.3d 74, 77 (2d Cir. 1995) (explaining that Rule 60(a) "permits only a correction for the purpose of reflecting accurately a decision that the court actually made").

¶ 18. The analysis of whether a judgment is subject to correction under federal Rule 60(a) thus "focuses on what the court originally intended to do." Blanton, 813 F.2d at 1577; Bainbridge v. Gov. of Fla., 75 F.4th 1326, 1333-34 (11th Cir. 2023) (describing trial court's original intent as "touchstone" of Rule 60(a) analysis). If this analysis reveals that "the flaw lies in the translation of the original meaning to the judgment, then Rule 60(a) allows a correction." United States v.

9

Griffin, 782 F.2d 1393, 1397 (7th Cir. 1986).  The federal cases also clarify that—contrary to husband's argument—where an error is appropriately classified as clerical under this test, its correction necessarily has no impact on the parties' substantial rights because the correction merely conforms the judgment to the trial court's intended disposition of those rights.  See Dudley v. Penn-Am. Ins. Co., 313 F.3d 662, 65 (2d Cir. 2002) (Sotomayor, J., concurring) ("The heart of the distinction between an error that is correctable under Rule 60(a) and one that is not is that a correction under Rule 60(a) cannot alter the substantive rights of the parties, but rather may only correct the record to reflect the adjudication that was actually made.").  Thus, "[w]here the record makes it clear that an issue was actually litigated and decided but was incorrectly recorded," the trial court can correct the judgment pursuant to Rule 60(a), even if "doing so materially changes the parties' positions and leaves one party to the judgment in a less advantageous position." Rivera, 647 F.3d at 199; see also Griffin, 782 F.2d at 1397 (explaining that Rule 60(a) "applies to all clerical miscues, trivial and important alike").

¶ 19.   With this understanding of the federal case law, we turn to Vermont's Rule 60(a) and husband's related arguments.  We first consider his contention that the error the court identified here was substantive.  As husband points out, while "[a]ssets are normally valued for distribution as of the day of the final divorce hearing, regardless of whether they were acquired during or after the parties separated," Golden v. Cooper-Ellis, 2007 VT 15, ¶ 10, 181 Vt. 359, 924 A.2d 19, the trial court "has broad discretion to equitably allocate marital property based on all relevant factors," and, "[i]n allocating certain assets . . . may find relevant the date of the parties' separation."  MacKenzie v. MacKenzie, 2017 VT 111, ¶¶ 31-32, 206 Vt. 244, 180 A.3d 855 (explaining that court "must consider for distribution all property owned by the parties" and value it "as closely as possible to the date of the final divorce hearing" but "[h]ow the court allocates the marital property is an entirely different matter").  But it does not follow—as husband argues—that the error the court identified here was inconsistent with the decision it actually made.  In exercising

10

its "broad discretion to consider the statutory factors and fashion an appropriate order," the court "provide[d] a clear statement as to what was decided and why." Turner v. Turner, 2004 VT 5, ¶ 7, 176 Vt. 588, 844 A.2d 764 (mem.). The court's original decision demonstrates that it intended to exercise its discretion to award wife half the value of husband's retirement accounts as of the final divorce hearing, creating the 48.67%-51.33% property split it deemed equitable based on the statutory factors.[2] The court's task was to "equitably divide" the marital estate, see 15 V.S.A. § 751, and the property division it determined was equitable was expressly predicated on wife receiving half of the value of husband's retirement accounts as of the April 30 hearing. The court's expressly intended division of the marital estate, as reflected in the final order, could be effectuated only if based on the April 30 values. The mistaken valuation date was thus not a choice consistent with the court's decisional judgment, but instead a "blunder[] in execution" of the type federal courts recognize as correctable under Rule 60(a). See Blanton, 813 F.2d at 1577 n.2 (quotation omitted).

¶ 20. Husband suggests, however, that our decision in Champlain Cable marked a deviation from the federal case law. In Champlain Cable, the trial court entered judgment against the defendant employer under the Vermont Fair Employment Practices Act (VFEPA), providing that the State "may recover its costs of action" and that all other requests for relief not specifically addressed in the order were denied. Id. at 437, 520 A.2d at 597. The State later moved for an award of attorney's fees, arguing that the phrase "costs of action" encompassed those expenses. The trial court granted the State's motion, explaining that its intention had been to allow attorney's fees through the final judgment order's reference to "costs." Employer appealed, arguing, among

---

[2] To the extent husband suggests that the Rule 60(a) analysis should differ here because the final divorce order was also signed by an assistant judge, we do not reach this contention because it was raised for the first time in his reply brief. See Vasseur v. State, 2021 VT 53, ¶ 15, 215 Vt. 224, 260 A.3d 1126 ("Our law is clear that issues not raised in an appellant's original brief may not be raised for the first time in a reply brief." (quotation omitted)).

11

other things, "that its decision not to take an appeal from the $70,500 judgment might well have been different had it been confronted with an award for attorney's fees in addition to the judgment on the merits." Id. at 438, 520 A.2d at 598.

¶ 21.    Crucially, our analysis in Champlain Cable began with the observation that—in sharp contrast to the circumstances here—"[a]lthough the court later stated it had intended to allow attorney's fees in its ruling, there was no way to derive that meaning from the language of the order." Id. at 438, 520 A.2d at 598 (explaining that term "costs of action" ordinarily does not encompass attorney's fees and observing that prior VFEPA case held that attorney's fees "are a litigation expense, not a 'cost' " (quoting State v. Whitingham Sch. Bd., 140 Vt. 405, 409, 438 A.2d 394, 397 (1981))).    We then turned to the State's alternative argument—that the trial court could have granted the motion under Rule 60(a). Id. at 439, 520 A.2d at 598.    We again looked to federal case law and, relying on that authority, explained:

> Rule 60(a) envisions giving relief from minor errors; errors that affect substantial rights of the parties are outside the scope of the rule.    See [Warner, 526 F.2d at 1212]; 11 C. Wright & A. Miller, Federal Practice & Procedure § 2854, at 149 (1973).    If a court does not render judgment, or renders one that is imperfect or improper, it has no power to remedy any such error or omission by treating it as a clerical mistake.    See Recile v. Ward, 496 F.2d 675, 680 (5th Cir. 1974).

Id. at 598-99.    Secondly, we noted that the grant of a motion to correct a clerical error under Rule 60(a) could not extend the time to appeal the underlying judgment, and the employer "would thus have been foreclosed from taking an appeal from the underlying judgment had it desired to do so following a Rule 60(a) grant of attorney's fees." Id. at 439, 520 A.2d at 599.    But see In re A.B., 2025 VT 12, ¶¶ 2-3 (recognizing that language in Champlain Cable regarding time to appeal was superseded by amendments to Vermont Rule of Appellate Procedure 4).    We held that "[u]nder the circumstances of this case, the award of $61,222.07 in attorney's fees and investigation costs

was not a minor error to be corrected under the auspices of Rule 60(a)." Champlain Cable, 147 Vt. at 439, 520 A.2d at 599.

¶ 22. This case is fundamentally unlike Champlain Cable. There is a substantial difference between construing the intent of a court that employs the word "costs" and comparing passages in the written analysis in a family court's final divorce order with its conclusion. Moreover, Champlain Cable's language that "Rule 60(a) envisions giving relief from minor errors," 147 Vt. at 439, 520 A.2d at 598-99, cites Warner, a federal decision that does speak to our view here. In Warner, the Fifth Circuit distinguished between "merely clerical errors" of the type often "made in transcribing or recording the judgment," and scenarios where the trial court "allegedly made an error of law, but the judgment did state what was intended"—in which case, the mistake "is not within the limited type of error encompassed by Rule 60(a)." Warner, 526 F.2d at 1212-13 (explaining that under Rule 60(a), "the court may correct errors, created by mistake, oversight, or omission, that cause the . . . judgment to fail to reflect what was intended at the time of trial"). The focus on the trial court's original intent in the federal cases we have looked to is in harmony with our decision here. Champlain Cable did not involve a circumstance where the trial court's stated intent was, in fact, supported by the language of its original order. Given this threshold distinction, our analysis in Champlain Cable has no bearing on the application of Rule 60(a) to the instant case.[3]

¶ 23. The trial court appropriately declined to take additional evidence, concluding that Rule 60(a) authorized it to correct a clerical error in its original decision to reflect its

---

[3] Husband also compares this case to Maille v. Kirkpatrick, No. 23-AP-111, 2023 WL 6786095 (Vt. Oct. 13, 2023) (unpub. mem.), https://www.vermontjudiciary.org/sites/default/files/documents/eo23-111.pdf. Maille is an unpublished panel decision and, like Champlain Cable, it did not involve a scenario where an aspect of the trial court's final order could be read to conflict with its otherwise-expressed intent. As a result, it has no persuasive value here. See V.R.A.P. 33.1(d) (explaining that an unpublished panel decision "may be cited as persuasive authority but is not controlling precedent").

contemporaneous intent as clearly laid out in that same decision. As the court explained, this modification did not alter the parties' substantial rights—it merely amended the order to accurately reflect its intended adjudication of those rights. The court was not required to hold an evidentiary hearing on the motion or, as husband contends, make factual findings in support of the conclusion that the alteration did not impact his substantive rights. The operative question for the court was what it "originally intended." See Blanton, 813 F.2d at 1577. Under the circumstances of this case, any findings the court could have made regarding the difference between the value of husband's retirement accounts as of the date of separation as opposed to the value of those accounts as of the final hearing could have no bearing on its analysis.

¶ 24. Finally, husband argues that the court's error effectively allowed wife to utilize Rule 60(a) in lieu of a timely motion under Rule 59 or direct appeal from the judgment. In support, he points to our case law surrounding Rule 60(b)(6), "the so-called catchall provision," Hill v. Springfield Hosp., 2023 VT 23, ¶ 20, 218 Vt. 64, 297 A.3d 504, that allows the trial court to relieve a party from a final judgment for any reason beside those set forth in the first five sections of Rule 60(b), provided the request is "filed within a reasonable time," V.R.C.P. 60(b). It is true that "Rule 60(b)(6) may not substitute for a timely appeal or provide relief from an ill-advised tactical decision or from some other free, calculated, and deliberate choice of action," but is instead "intended to accomplish justice in extraordinary situations that warrant the reopening of final judgments after a substantial period of time." Riehle v. Tudhope, 171 Vt. 626, 627, 765 A.2d 885, 887 (2000) (mem.). Thus, to determine the "limits on when relief is available" under Rule 60(b)(6), courts "must be concerned about the certainty and finality of judgments so that litigation can reach an end." Richwagen v. Richwagen, 153 Vt. 1, 4, 568 A.2d 419, 421 (1989). Husband asks that we graft these same considerations onto the Rule 60(a) analysis. We reject this invitation as inconsistent with the plain language and the purpose of Rule 60(a).

¶ 25. The issue here is trial court's clerical error. While motions under Rule 60(b)(6) must be filed "within a reasonable time," a trial court may correct a clerical error under Rule 60(a) "at any time." V.R.C.P. 60. The authority granted by Rule 60(a) thus "does not depend on whether a motion for relief is made within a reasonable time or within one year of judgment, as is required where the relief must be sought under Rule 60(b)." Scola, 618 F.2d at 152. The plain language of the rule therefore forecloses husband's argument. See In re VSP-TK, 2019 VT 47, ¶ 25 (explaining that in interpreting court rule, we consider its plain language and "do not supply words which have been omitted").

¶ 26. In reaching this conclusion, we do not diminish the importance of finality of judgments in this or any other context. Rather, we recognize that the drafters of the rules weighed those considerations and concluded that if there is a "clerical mistake" within the meaning of Rule 60(a), the goal of allowing the party to receive the relief the court intended to provide necessarily outweighs the goals of finality and repose. The various provisions of Federal Civil Rules 59 and 60 governing the modification of judgments "weigh the value of finality and repose against the various grounds that a party may have for moving to alter a judgment," and "place varying limitations on the time within which such motions may be made." In re Frigitemp Corp., 781 F.2d 324, 327 (2d Cir. 1986). The rationale for the provision that a Rule 60(a) motion may be made at any time "is that the judgment simply has not accurately reflected the way in which the rights and obligations of the parties have in fact been adjudicated." Id. "In those circumstances, the goals of finality and repose are outweighed by the equitable goal of allowing a party who has in fact established [her] right to relief to receive that relief." Id.; see Lowe v. McGraw-Hill Cos., 361 F.3d 335, 342 (7th Cir. 2004) (noting that there is no deadline for Rule 60(a) relief and observing that "clerical errors within the rule's meaning are not the kind of error that invites reliance, because they do not deceive either party concerning the content of the judgment; and so a deadline is not important to protect reliance"). The same is true of the Vermont corollary.

15

¶ 27.     Husband has shown neither an error of law nor an abuse of discretion in the court's analysis under Rule 60(a).  This places his remaining arguments beyond the scope of our review.  Though different in substance, these two contentions are identical in thrust: husband asserts that the court's decision to modify the final order must be reversed because, as a matter of procedure, the court erred in considering the arguments raised in wife's December motion for relief from judgment.  Specifically, husband argues that because the court mistakenly concluded that his opposition was untimely, it did not consider his arguments in opposition to modification— including the argument that the mediation requirement barred the motion and required its dismissal.  Although wife's motion alerted the court to the valuation-date discrepancy, Rule 60(a) authorized the court's correction of a clerical mistake "at any time of its own initiative," and the court retained the power to correct what it identified as a mistake independent of wife's motion.  As a result, there was no prejudice to husband and any error alleged in the handling of wife's motion is necessarily harmless.  See Sumner v. Sumner, 2004 VT 45, ¶ 14, 176 Vt. 452, 852 A.2d 611 (applying harmless-error standard to family court's ruling on post-judgment motions in divorce).

Affirmed.

FOR THE COURT:

_____

Chief Justice

16